REUBEN MILLER, JOHN R. FRANCIS, CHARLES D. BARRETT AND JOHN BARRETT,

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

1. EVIDENCE—*confessions.* The rule has long been settled that, while a free and voluntary confession of guilt is of the highest order of evidence, one extorted is never received.

2. So, where one was taken from his home about midnight by a body of men armed and disguised, and hung on a tree in a neighboring wood, and being taken down almost senseless, made a confession, implicating himself and

others in a robbery, it was error to allow it to go to the jury on the trial of an indictment for the offense against those thereby implicated.

3. MIDDLE LETTER—*not a part of the name.* The middle letter of a name is, in law, no part of the name. So, when an indictment alleged that J. R. R. was robbed, and the proof was that it was J. B. R. who was robbed, there was no variance.

4. JURY—*to decide on the entire testimony.* In a criminal case, the jury are to consider the entire testimony, and may disregard the statements of such witnesses as have been successfully impeached, unless such statements are corroborated by other evidence not impeached.

5. REASONABLE DOUBT—*what will amount to.* A merely chimerical or conjectural doubt will not justify an acquittal; it must be a doubt arising from a candid and impartial investigation of all the evidence, and such as, in the graver transactions of life, would cause a reasonable and prudent man to hesitate and pause. And, when the jury can say, after considering all the evidence, that they have an abiding conviction of the truth of the charge, they are satisfied beyond a reasonable doubt.

6. It is a familiar doctrine in criminal cases that, if a reasonable doubt of the guilt of the prisoner is entertained, the jury have no discretion, but must acquit.

7. CONCERT OF ACTION—*what will amount to.* Where several are jointly indicted for robbery, and the evidence shows that all acted together, each aiding in his own way, all are guilty, though they did not actually meet together and agree to commit the robbery.

8. ALIBI—*evidence concerning.* Evidence of an *alibi*, whether sufficient to render the guilt of the defendant impossible or only improbable is proper for the jury, and he is entitled to the benefit of any reasonable doubt the jury may entertain on this point.

9. SAME—*failure to prove.* Where a defendant attempts to prove an *alibi* and fails to do so, it should have no greater weight to convince a jury of his guilt than a failure to prove any other important item of defense, and should not, generally speaking, operate to his prejudice.

10. EVIDENCE—*destroyed or concealed.* The suppression, destruction, or concealment of evidence against the accused is a circumstance from which the jury should draw some, but not the strongest, inference of guilt.

11. INSTRUCTIONS—*by State's attorneys.* Attorneys for the State, *it seems,* should ask very few instructions, and those as plain and simple as language can make them.

12. DESCRIPTION OF THE ACCUSED—*some evidence of guilt.* Where the jury believed, from the evidence, that R. was robbed by persons staying in his immediate neighborhood, and of a particular description, evidence that there were then no other persons than defendants in that neighborhood, of that description, is a circumstance of some weight against those of the accused thus described

13. IMPROPER EVIDENCE—*when material is ground for a reversal.* Where material evidence was improperly allowed to go to the jury it is good ground for reversing the judgment.

14. OFFICER IN CHARGE OF A JURY—*when he should be punished.* An officer in charge of a jury, after a case was committed to them, who suffered individual jurors to separate from the panel, deserves the punishment of the court.

15. MISCONDUCT OF OFFICER—*does not vitiate verdict.* But, in such a case, where there was no undue influence upon the jury, while so separated, the court would not, from that reason, set aside a verdict otherwise proper.

WRIT OF ERROR from the Circuit Court of Clark county; the Hon. CHARLES H. CONSTABLE, Judge, presiding.

This was an indictment against the plaintiffs in error, for robbery, found at the March Term, A. D. 1865. On the trial Isaac B. Randolph testified as follows:

"My name is Isaac B. Randolph; I live in Clark county; on the night of the 5th of March last, while I was in bed, asleep, the front door was bursted in and three men entered my house, one with a candle in his hand, the other two with revolvers; they were blacked; one wore a slouched hat and a handkerchief tied over it; they presented their revolvers and demanded my money; I gave them $50 out of my breeches; they said I had more, and called to some one outside to bring in the hay; I noticed the spokesman most closely; I went to a press in the corner and gave them $350 more; that was in an envelope; they then left, saying I should not be disturbed any more; I identify the prisoners as the three men; next morning I found they had taken a rail from the fence to burst open the door; I saw four tracks where they got the rail; two of them were ordinary; one of the other two tracks had a heel plate and large tacks in the toe; this track turned out more than common, and the fourth track turned in rather pigeon-toed; I followed these tracks about three-quarters of a mile; they went east a hundred yards, then crossed the road, and about a hundred yards beyond they seemed, from the stamping around, to have parleyed awhile; they were young men; one was spare made, one heavy set; they were in my house ten minutes;

I afterward saw Miller as he was being taken to squire Taylor's; he held up his foot and asked if I saw any tracks such as that would make; his boot had a heel plate and tacks in the toe; I told him I did see plenty such; I went to Taylor's; it was nearly midnight; about twenty men were in the room; I had just moved to the neighborhood and knew but few persons; I went in and selected the two Barrett boys; they were sitting together; I pointed to Francis as the other one; no one pointed either of them out, or indicated by description of clothing or otherwise which had been arrested; they were not then blacked; I never saw these men before the robbery; Francis was the one that had the handkerchief over his hat, the one that did the talking, and the one that received the money; the clock struck eleven a few minutes after they left.

*R. Ratts:* I saw the tracks at Randolph's house; on Monday night, myself and (eight others named), went to the house of Mrs. Francis; she was an aunt of Riley Francis, and he was staying there; we called for Riley; he came to the door; some of us had our coats wrong side out; some had their caps reversed, and one had his cap wrong side out; we told Francis we had come to take him to Taylor's; he asked for a writ; we told him we had one, but we had not; he came and we started toward the woods; Francis began to halloo; I caught hold of him, gave him a few jerks and made him hush. As we went on I asked him when Dave Packard had been up; he said about two weeks ago; I struck him with my open hand, and he then said he had been up a few days before; we went down in the woods; stopped and put a rope round his neck and over a limb; told him he knew what we wanted him to tell, that Randolph had been robbed, and we wanted him to tell all about it; he protested his innocence; we started to pull him up, but the rope broke; the second time his feet swung clear of the ground, but the rope broke again; people were then passing from church, and we moved about a quarter of a mile further into the woods; John Coons was riding; some one suggested to get his bridle rein and we did; we then hung Francis, and he gave the signal to be let down, which was a grip of the hand;

he then said Barretts and Miller were in it but he was not; we hung him again, and when let down he confessed that he was in it; this was about eleven or twelve o'clock at night; Francis said that he, Reuben Miller, John and Charles Barrett, robbed Randolph; he said he was "kinder" lost when he got to Randolph's; some of the men marked on the ground the position of Randolph's house, the fences and road; he said Miller butted the door down with a rail; he and the two Barrett boys went in and Miller stayed out; he said they got some money out of Randolph's breeches, and some out of the safe in the corner, which was in an envelope; he said in coming from Randolph's they crossed the road and stopped about one hundred and fifty yards from it and talked awhile. I helped to arrest Miller; when we called he came to the door; he had his pistol in his hand; he put out his hand to shake hands, and then saw the other men and drew back; I pushed it; he kept setting chairs in the way, and I set them out till we got nearly to the wall; he then said he would go if we would let him take his weapons; we said he might; he had been drafted and pretended like he thought the military were after him; just after he put his revolver in its case, he took a pocket-book out of his pocket, and slipped it "sorter" under his coat to his wife who was standing just behind him; it bulged out; he then said we might search him, that he had nothing but pocket-change; did not make any effort to get the pocket-book; as we went along, Miller said: "That d—d clan has got me into this; I know where Allen Porter and Packard roost over on the knobs, and I'll have them taken and will help to do it; if you will hang Riley Francis up, he will belch her;" we took Miller by Randolph's; when Francis got to the squire's he denied all that he had said when we hung him in the woods; Francis said Miller had the money.

The remainder of the testimony sufficiently appears in the opinion of the Court.

Mr. W. L. Dalaney, for the plaintiffs in error.

Mr. S. S. Whitehead, State's Attorney, and Mr. C. M. Morrison, State's Attorney, for the people.

Mr. Justice Breese delivered the opinion of the Court:

This was an indictment in the Circuit Court of Clark county for robbery. The prisoners were convicted and sentenced to the penitentiary. They bring the case here by writ of error, and assign for error the giving the third, sixth, eighth, tenth, eleventh, thirteenth, fourteenth and fifteenth instructions on behalf of the people, in refusing the eighth instruction asked by the prisoners, in permitting the confession of Francis to go to the jury, and in overruling the motion for a new trial.

The record shows the confession of Francis was extorted from him by a high-handed act of violence and wrong and under circumstances of unusual cruelty. At about midnight, he was taken from his home by a body of armed and disguised men to a neighboring wood, and there hung upon a tree by the neck, when, taken down almost senseless, he confessed that he, with the other prisoners charged, committed the robbery, and detailed the circumstances.

The rule has been long settled in our law that, while a free and voluntary confession of guilt is of the highest order of evidence, one extorted is never received. Unlike the laws of the polished and learned Romans, the cruel provisions of which allowed criminals, and even witnesses in some cases, to be put to the torture, for the purpose of forcing a confession, ours, in most commendable contrast, are fashioned in a spirit more just and humane.

The confession of Francis, against objections, should not have gone to the jury.

The eighth instruction asked by the defendants was the following:

"It is essential, in all criminal prosecutions, that the name of the party injured should be proved as charged in the indictment, and if the proof shows that the robbery was committed

on Isaac B. Randolph, and not on Isaac R. Randolph, as charged in the indictment, they must acquit the defendants."

The indictment charges the robbery to have been committed on Isaac R. Randolph; it was proved it was committed on Isaac B. Randolph, to whom the stolen money belonged.

In support of this objection, the counsel for plaintiffs in error contends that, although it was unnecessary to insert the initial " R " in the name of the party robbed, yet, as it was inserted, and it was not proved he was as well known by the one name as the other, the variance is fatal.

We are not of this opinion. The middle initial might, as counsel admits, have been wholly omitted in the indictment, and it would have been good if the real Randolph was intended to be named in it as the owner of the property stolen. In law, the middle letter of a name is no part of the name. It may be dropped and resumed or changed at pleasure, and the only inquiry is one of substance, was he the real party robbed? *Erskine* v. *Davis*, 25 Ill. 251.

The third instruction given for the people is as follows :

" In determining the guilt or innocence of the defendants, the jury are to consider the entire evidence in the case, but they are at liberty to disregard the statements of such witnesses (if any there be) as have been successfully impeached either by direct contradiction, or by proof of general bad character, unless the statements of such witnesses have been corroborated by other evidence which has not been impeached."

We see no substantial objection to this instruction. It comes within the rule often announced by this court. *Crabtree* v. *Hagenbaugh*, 25 Ill. 233.

The following is the sixth instruction :

" In considering the case the jury are not to go beyond the evidence to hunt up doubts, nor must they entertain such doubts as are merely chimerical or conjectural. A doubt to justify an acquittal must be reasonable, and it must arise from

a candid and impartial investigation of all the evidence in the case, and unless it is such that, were the same kind of doubt interposed in the graver transactions of life, it would cause a reasonable and prudent man to hesitate and pause, it is insufficient to authorize a verdict of not guilty. If, after considering all the evidence, you can say you have an abiding conviction of the truth of the charge, you are satisfied beyond a reasonable doubt."

We think the law in regard to the nature of the doubt which a jury may properly entertain, is here correctly stated. *Pate* v. *The People*, 3 Gilm. 644. It is a familiar doctrine of the law in criminal cases, that if a reasonable doubt of the guilt of the prisoner is entertained, the jury have no discretion, but must acquit. *Reins* v. *The People*, 30 Ill. 256. Where there is an abiding conviction of the truth of the charge resting in the minds of the jury, there cannot be, at the same time, in the same mind, a reasonable doubt.

The following is the eighth instruction :

"While the law requires that, to find the defendants guilty in this case, the evidence should show that they were acting in concert, still it is not necessary that it should be positively proved that they actually met together and agreed to rob Randolph. Such concert may be proved from circumstances, and if, from all the evidence, the jury are satisfied that the defendants acted together, each aiding in his own way, it would be sufficient."

This instruction is wholly unobjectionable, and is expressed in appropriate language, and is the law of the subject embraced in it.

The tenth instruction is this :

"In this case, what in law is known as an *alibi*—that is the defendants were at another place at the time of the commission of the robbery, is in part relied on by the defendants. To render the proof of an *alibi* satisfactory, the evidence must

cover the whole time of the transaction in question so as to render it impossible that the defendants could have committed the act. It is not enough that it renders their guilt improbable merely."

The last clause of this instruction vitiates the whole. The frame of the instruction in the preceding clauses is proper, and expresses the true doctrine in respect to the proof of an *alibi*. The theory of an *alibi* is, that the prisoner was so far removed from the scene of the crime, at the time of its commission, as to make it impossible that he could have committed it, but he is entitled to the benefit of any reasonable doubt the jury may entertain on this point. *Hopper* v. *The People*, 31 Ill. 393.

Instruction eleven is as follows:

"If the jury believe from evidence that the defendants or either of them upon the trial of this case have attempted to prove an *alibi*, and failed, it is a circumstance of great weight against them, and proper to be considered by the jury in determining their guilt or innocence."

There is a slight objection to this instruction, and it is this: Failing to prove an *alibi* should have no greater weight to convince a jury of the guilt of the prisoner attempting it than the failure to prove any other important item of defense. A prisoner is entitled to rely on the facts in his favor, he may suppose he is able to prove, and if he is so unfortunate as to fail in his proof, it should not, generally speaking, operate to his prejudice. Proof of an *alibi* is a defense as legitimate as any other, and the court should not say, lest it prejudice the minds of the jury, that failing to establish it, should have great weight against the prisoner, for that is the import of this instruction.

The thirteenth instruction is as follows:

"The jury has no right to presume or believe that other persons than those on trial might have committed the robbery unless such presumption or belief arises from the evidence

given on the trial, and the fact that other persons might have committed the robbery does not necessarily exclude legal evidence of the guilt of the accused and upon which the jury would be bound to find the defendants guilty."

This instruction is objectionable. It is not perspicuous, and, by giving it, the jury might have been confused and misled.

The fourteenth instruction has reference, we presume, to a portion of the testimony of several of the witnesses, as to the conduct of Miller when he was taken into custody. They testified that he, on that occasion, took a pocket-book out of his pocket and slipped it under his coat to his wife, standing behind him, and then said they might search him, he saying that he had nothing but pocket-change. The following is the instruction:

" The suppression, destruction or concealment of evidence against the accused is a circumstance from which the jury should draw the strongest inference of guilt, because if he were innocent he would have no interest in concealing, or destroying, or suppressing such testimony."

The instruction should have omitted the epithet " strongest," and the reason or argument of the proposition. Such destruction or concealment of evidence might, doubtless, warrant the jury in unfavorable inferences against a prisoner who has done such an act, and be some evidence of guilt. We would not reverse a judgment by reason of the error in this instruction, but deem it proper to say that the attorneys for the State should ask very few instructions, and those as plain and simple as language can make them.

The fifteenth instruction is not materially objectionable. If the word " great" was omitted it would be unexceptionable. It is as follows:

" If the jury believe from evidence that Randolph was robbed by persons residing or staying in or near his immediate neighborhood, the circumstance of the description of the defend-

ants by the evidence that there are no other persons staying in or near his neighborhood answering to that description are of great weight against such of the accused thus described."

The remaining error assigned is in overruling the motion for a new trial, the verdict being, as alleged, contrary to the evidence.

We think the testimony of Randolph, with other facts, which were properly before the jury, to which the confession of Francis led, were sufficient to establish the guilt of all the parties, provided the jury discredited the testimony of the witnesses for the prisoners, which it would seem they were justified in doing by the testimony of the impeaching witnesses, and by the established facts of the case. But as we are unable to say what effect the extorted confession of Francis may have had upon the jury to lead their minds to the conclusion they have reached, connected with the other testimony, we are bound to reverse the judgment, on the principle that material evidence was before them, which was not properly there.

As to the misconduct of the officers in suffering individual jurors to separate from the panel after the case was committed to them, in the absence of undue influences upon them while so separate, we would not for that reason set aside a verdict otherwise proper. The officer deserves the punishment of the court, but there is no proof the prisoners have been prejudiced by his misconduct. *Davis* v. *The People,* 19 Ill. 78; *Reins* v. *The People,* 30 id. 256.

For the reasons given, the judgment must be reversed and the cause remanded, that a new trial may be had.

*Judgment reversed.*