Polin v. State.

JOHN R. POLIN, PLAINTIFF IN ERROR, v. THE STATE OF NEBRASKA, DEFENDANT IN ERROR.

1. **Grand Jury:** SELECTION OF. Where no want of good faith in the selection of persons from whom grand jurors are drawn is shown, the mere fact that one of them did not reside in the precinct where he was supposed to, and from which he was drawn, will not invalidate an indictment found by them.

2. ———: ———. The list of electors voting at the next preceding general election in the county furnishes a suitable and fair basis for the selection.

3. **Continuance:** AFFIDAVIT FOR. An affidavit for a continuance, on account of absent witnesses, which fails to show that either their personal attendance or testimony will probably be obtained, if time be granted, is insufficient.

4. **District Attorney:** ASSISTANCE TO. The district attorney, in a criminal trial, may have the assistance of counsel employed on private account.

5. **Evidence.** The court did not err in refusing to order the sheriff to fire the revolver with which prisoner killed deceased, with the view of ascertaining its liability to go off at half-cock.

6. ———. In a trial for murder, evidence of criminal intimacy between the prisoner's wife and the deceased, not brought to his knowledge before the killing, is inadmissible.

7. ———: INSANITY. On the question of the prisoner's alleged insanity, non-expert testimony is admissible.

8. **Thanksgiving Day:** ADJOURNMENT OF COURT TO. The formal adjournment of court to, and opening of it on Thanksgiving Day, no step in the case being taken on that day, is not cause for a new trial.

9. **Instruction:** REASONABLE DOUBT. An instruction in which it is said that: "The proof is deemed to be beyond a reasonable doubt when the evidence is sufficient to impress the judgment and understanding of ordinarily prudent men with a conviction on which they would act in their most important concerns or affairs in life," sustained.

10. **Practice:** STATEMENTS IN PRESENCE OF JURY. It is not error for counsel in arguing, in the presence of the jury, the competency of a witness, based on testimony given of her admissions,

to make a fair reference thereto, to say it is "false," and that the witness will deny it.

11. ———: SEPARATION OF JURY. A separation of the jury before the taking of testimony is closed in a criminal trial, known to the prisoner or his counsel at the time it occurred, but not disclosed to the judge until after verdict, is not cause for a new trial.

12. ———. In such case a party is not permitted, without objection, to take the chances of a favorable result, and then, if disappointed, for the first time complain.

13. Judgment: AUTHENTICATION. A transcript of a judgment of the district court, brought to the supreme court for review, certified by the clerk of the court under his official seal, is sufficiently authenticated without the signature of the judge.

ERROR to the district court for Cass county. Tried below before POUND, J. Indictment for murder in the first degree and sentence of death.

*Allen Beeson* and *Sullivan & Wooley*, for plaintiff in error.

Plea in abatement should have been sustained. *Burley v. The State*, 1 Neb., 396. *Preuit v. The State*, 5 Id., 377. *Barton v. The State*, 12 Id., 260. *Clark v. Saline County*, 9 Id., 516. *State v. Conner*, 5 Blackf., 225. Continuance. Wharton's Crim. Law, § 2,930. *Williams v. The State*, 6 Neb., 338. *State v. Lewis*, 1 Bay, 1. Private counsel. *Meister v. The People*, 31 Mich., 101. *Com. v. Gibbs*, 4 Gray, 147. *Cuming County v. Tate*, 10 Neb., 193. Non-expert testimony as to insanity. *Schlencker v. The State*, 9 Neb., 251. Adjournment. 3 Graham & Waterman New Trials, 1411. *Chapman v. The State*, 5 Blackf., 11. *Pierce v. Atwood*, 13 Mass., 329. Reasonable doubt. *People v. Brannon*, 47 Cal., 96. *Jane v. Com.*, 2 Metc. (Ky.), 30. Statements of district attorney in presence of jury. *Carter v. The State*, 37 Tex., 362. *People v. Devine*, 44 Cal., 462. *White v. The State*, 10 Tex. App., 394.

Separation of jury. *Eastwood v. People*, 3 Park. Cr., 25. On validity of judgment, cited: *Weed v. The People*, 31 N. Y., 465.

*Isaac Powers, Jr., Attorney General*, and *J. C. Watson, District Attorney*, for the State.

Continuance. *Werks v. The State*, 31 Miss., 490. *State v. Rorbacker*, 19 Iowa, 154. Assistant to district attorney. *State v. Bartlett*, 55 Maine, 200. 1 Bish. Cr. Pro., § 281. *State v. Fitzgerald*, 49 Iowa, 260. Excluding testimony of criminal intimacy. *State v. John*, 8 Ired., 330. *Sawyer v. The State*, 35 Ind., 80. Insanity. *Schlencker v. The State*, 9 Neb., 251. Adjournment. *People v. Lafumte*, 6 Cal., 202. Misconduct. *Davis v. State*, 33 Ga., 98. *Combs v. State*, 75 Ind., 215. Separation of jury. *Caw v. The People*, 3 Neb., 358. *Walrath v. The State*, 8 Id., 81. Judgment is good. *Eastman v. Hartlan*, 12 Wis., 296. *Chamberlain v. Ball*, 15 Gray, 352.

LAKE, CH. J.

The first objection to the judgment in this case is that made to the overruling of the plea in abatement. There are two points urged against the indictment, neither of which can be sustained. The first is, that one of the grand jurors by which it was found, although a resident of the county, did not live in the precinct from which he was drawn. That the utmost good faith characterized the selection of the jury is unquestioned. The statute, sec. 658 of the code of civil procedure, provides that the sixty persons from whom, for each term of a district court, jurors, grand and petit, are to be drawn, shall be selected, "as nearly as may be, a proportionate number from each precinct in the county." This provision should have a reasonable construction, but it would not be reasonable to hold that the mistake of the commissioners in supposing that a

person selected by them lived in one precinct of the county, when in fact he lived in another, would disqualify him for serving, or that it tended in the least degree to prejudice the prisoner. To so hold would be altogether too technical. It would be productive of no good, and result in infinite mischief in the administration of justice.

The second point is, that the selection was based on the vote of the county cast at the preceding general election. It is argued that it ought to have been made on the census returns; but why on them, rather than on the basis adopted, no satisfactory reason is given. The census returns would, in our opinion, approximate much less nearly to the actual ratio then existing between the precincts of persons qualified to serve as jurors than was reached by the basis adopted.

The statute is silent as to the mode of ascertaining who, of all the inhabitants of a county, are qualified to serve in this capacity. No provision is made for the county commissioners to enter upon a special inquiry with the view to an exact result. A particular enumeration evidently was not contemplated by the legislature, or provision would have been made for it. They are left to act upon the means at hand, and so long as those adopted are fair, and result in a reasonable approximation to the ratio named, it is all that could have been intended, and all that is required.

To be qualified as a grand juror, a person must be an elector of the county in which he is called to serve. There are also several other requirements in the matter of qualification to be observed, which, however, the census reports would not disclose. And even in the matter of the number of qualified voters in the county, and of the ratio existing between the precincts thereof at the time of making the selection, they would have been exceedingly unreliable, much more so than was the basis taken by the commissioners.

As the statute on this subject is, if we were called upon

to name a basis of selection at any time, we know of none accessible to the commissioners that would serve the purpose better than the votes cast at the latest general election. While this, probably, would not give a result mathematically accurate, in consequence of non-voters, yet, as the proportion between these and the whole number of electors may fairly be presumed to be about the same in all of the precincts, it is practically correct, and all that can reasonably be required. We see no error in the rulings respecting the grand jury, and the plea in abatement was properly overruled.

The affidavits for a continuance were insufficient. Most, if not all, of what it was claimed the absentees would swear to, if present, could not have been received in evidence because of its immateriality. In addition to this, the whereabouts of but one of the persons named was disclosed. He lived in Pennsylvania, but it was not shown that, even if time were given, either his personal attendance or testimony would probably be secured. There was no error in this particular.

It is further claimed that the court erred in permitting an attorney employed and paid by private parties, friends of the deceased, to aid the district attorney in the prosecution of the case. This claim is based on the following provisions of the statute: Sec. 15, Comp. Stat., 66, provides that, " It shall be the duty of the district attorney of each judicial district to appear in the district court at each term of the same," * * * "and prosecute and defend all actions, civil and criminal, and all matters whatsoever in which the state or county may be interested." Sec. 17 prohibits him from receiving " any fee or reward from or on behalf of any prosecutor or other individual for his services in any prosecution or business to which it shall be his duty to attend," etc.

As we understand the claim made by counsel, it is not that these sections prohibit the district attorney from hav-

ing the assistance of other attorneys in criminal prosecutions, but simply of attorneys employed on private account. And so under a similar statute it was decided by the supreme court of Massachusetts, followed by that of Michigan, in several cases cited. But the courts of other states, notably those of Maine, Iowa, and Kansas, under like statutes, have decided, and we think the weight of authority is, the other way. *State v. Bartlett*, 55 Me., 200. *State v. Wilson*, 24 Kan., 189. *State v. Fitzgerald*, 49 Ia., 260. But without regard to the preponderance of authorities, we think, as was said by the court in the case last cited, that such employments in this state have been "too long acquiesced in to be now called in question." It is a fact commonly known, that from the beginning of criminal trials in this state this practice has been quite general, and'yet, so far as we are aware, not even an attempt has been made to put a stop to it by positive legislation on the subject, which doubtless would have been done if it had been regarded as illegal or in any way improper.

The request made on behalf of the prisoner, for the judge to order the sheriff to discharge some of the cartridges remaining in the revolver with which the deceased was killed, was properly overruled. The object of this request was, it is said, to sustain the theory of the defense, that the killing was accidental, the revolver having gone off, as was claimed, at half-cock. In the first place, the judge had no authority to require the sheriff to make the experiment; and in the second, the possibility of a discharge at half-cock could have been shown just as well with the chambers of the revolver empty as by an actual discharge.

There is no error in the several rulings adverse to the prisoner respecting the admissibility of evidence as to the alleged criminal intimacy between his wife and the deceased. Whatever in this regard was brought to the knowledge of the prisoner, which was of very little significance indeed, was admitted, although even this, considering the length of

time that had elapsed after the knowledge was acquired before the killing, was quite immaterial. *Sawyer v. The State*, 35 Ind., 80.

The non-expert testimony on the question of the prisoner's alleged insanity was admissible. The witnesses had known the prisoner for years, were more or less intimately acquainted with his habits and practices, and formed their opinions from facts within their own knowledge. Their testimony was clearly within the rule announced in the case of *Schlencker v. The State*, 9 Neb., 241.

Error is also alleged upon the fact that probably through inadvertence the court was, on the evening of the 29th of November, formally adjourned to the morning of the 30th, which in that year was Thanksgiving day—a legal holiday—on which the transaction of most of the ordinary business of courts is prohibited.

Sec. 38. "No court can be opened, nor can any judicial business be transacted on Sunday, or on any legal holiday except—I. To give instructions to a jury then deliberating on their verdict. II. To receive a verdict or discharge a jury. III. To exercise the powers of a single magistrate in a criminal proceeding." Comp. Stat., 202.

The formal adjournment to a time when the court could not convene must be treated as a nullity; so, too, must be the formal opening of the court on Thanksgiving morning. There was, therefore, no actual adjournment on the 29th of November, but practically only a recess or abstinence from business to the morning of December 1st, when the trial proceeded. The objection made to this irregularity is strictly technical, and entirely devoid of merit. The prisoner could not have been prejudiced by it in the slightest degree, and the objection must be overruled.

An exception was taken to an instruction to the jury upon the meaning of the term "reasonable doubt," as applied to the question of the prisoner's guilt. The jury were told that, "By a reasonable doubt, is not meant that

the accused may possibly be innocent of the crime charged against him, but it means an actual doubt, having some reason for its basis. A reasonable doubt that entitles to an acquittal is a doubt of guilt reasonably arising from all the evidence in the case. The proof is deemed to be beyond a reasonable doubt when the evidence is sufficient to impress the judgment and understanding of ordinarily prudent men with a conviction on which they would act in their most important concerns or affairs of life."

While there are some decisions which probably do not sustain this definition of "reasonable doubt," there are others which do, and we are satisfied with and approve it. It is not visionary, but has the qualities of being reasonable, practical, and capable of being understood by ordinary minds.

In the case of *Miller et al. v. The People*, 39 Ill., 457, an instruction of nearly the same import was sustained. It was in these words: "A doubt to justify an acquittal must be reasonable, and it must arise from a candid and impartial investigation of all the evidence in the case, and unless it is such, that were the same kind of doubt interposed in the graver transactions of life, it would cause a reasonable and prudent man to hesitate and pause, it is insufficient to authorize a verdict of not guilty. If after considering all the evidence you can say you have an abiding conviction of the truth of the charge, you are satisfied beyond a reasonable doubt." And in *Commonwealth v. Webster*, 5 Cush., 295, Chief Justice Shaw said, that to be proved beyond a reasonable doubt the evidence must be such as to "establish the truth of the fact to a reasonable and moral certainty; a certainty that convinces and directs the understanding and satisfies the reason of those who are bound to act conscientiously upon it."

In the case of *The State v. Ostrander*, 18 Iowa, 458, the supreme court of Iowa considered an instruction of precisely the same import as one given in this case, and the

sustained it.   See also *Arnold v. The State*, 23 Ind., 170.

The prosecution offered the wife of the prisoner as a witness to contradict certain statements made by him and some of his witnesses in their testimony respecting certain admissions said to have been made by her to him affecting her character for chastity, and tending to show criminal intimacy between her and the deceased.

In arguing to the court the competency of the wife under the statute to testify, the district attorney narrated the statements which he proposed to disprove by her, and said they were "false," and that she would "deny them."   Objection is made to this statement of the district attorney, and also to certain others made in his argument to the jury, by which he characterized the plea of insanity in criminal cases generally, as a "sham" and "device" resorted to by defendants when they had no defense, illustrating by a reference to the Guiteau case.   It is claimed that it was unwarranted and had a tendency to prejudice the prisoner.

Although we are not now called upon to decide the question, it may not be out of place to say it is quite probable that the district attorney was right in his claim that the wife of the prisoner was competent to contradict the testimony of the prisoner as to her admissions to him.   But however that may be, we see nothing in what was said by the district attorney deserving of censure, or not strictly within the limits of a fair conduct of the case.   There may sometimes be circumstances when it would be practicable and proper to abstain from stating what a proposed witness would testify, in arguing the question of his competency to give evidence, as where the question is simply whether he is competent for any purpose.   But that was not the question here.   It was conceded by the district attorney that but for the fact of the prisoner having gone upon the witness stand and disclosed what he claimed were her admissions to him, she would have been incompetent. He based his claim that she was competent to give certain

testimony solely upon what he contended was the prisoner's waiver of his statutory right to exclude her by having himself voluntarily testified concerning it. In such case there is surely no impropriety in giving a fair statement of the testimony on which the claim of waiver is based, and to say that the proposed witness will disprove it.

Error is also alleged on what is called a separation of the jury, in disobedience of an order of the judge that they should be kept together during the periods of recess and adjournment. Several affidavits filed on behalf of the prisoner show that at the unauthorized meeting of the court and parties on the morning of the 30th of November, and before the taking of the evidence was completed, two or three of the jurors in the court room separated a little from their fellows and engaged in a brief conversation with bystanders. This was known by the prisoner's counsel, and probably by the prisoner himself at the time it occurred, yet no complaint was made to the judge, but the trial was permitted to proceed without objection until after verdict.

Although it is abundantly shown by the affidavits of the jurors themselves, and of the persons with whom they conversed, that nothing at all improper was said or done by either of them during the separation, even without this we are of opinion that under the circumstances no just ground of complaint is shown. The objection first appeared in the motion for a new trial, and came too late. If the separation were thought to be at all prejudicial to the prisoner, it ought to have been brought to the notice of the judge at once, upon discovery, so that an investigation could have been made, to the end that without further fruitless expense, if justice required it, the trial could have been stopped, that jury discharged, and a new one impaneled to try the case.

Parties litigant, even defendants in criminal cases, must deal fairly by the court. They are not permitted to with-

hold information of matters transpiring in the progress of a trial, whether prejudicial or otherwise, and thus, without objection, permit it to proceed to a conclusion, and then take advantage of them. Generally all objections not jurisdictional as to the subject of the litigation must be made at the first opportunity, or they are deemed to be waived. The rule in such cases is, that a party shall not be permitted without objection to take the chances of a favorable result, and then, if disappointed, for the first time complain.

The only remaining objection to be noticed is, that the record brought to this court does not show that the judgment was signed by the district judge; in other words, that it is not properly authenticated. There is nothing in this point. The very first clause of the petition in error asserts the fact that the judgment was rendered by the district court for Cass county, and relief is sought against it. A party cannot be heard to stultify himself. He may not in one breath assert that there is a judgment which he seeks to have reversed, and in the next that there is no judgment.

It is authenticated in the usual form by the clerk of the court, with his official seal, and that is sufficient for the purpose of this proceeding.

After a careful examination of the record, we discover no error, and the judgment must be affirmed.

JUDGMENT AFFIRMED.