## ARTHUR B. CARTER V. STATE OF NEBRASKA.

### FILED OCTOBER 2, 1915. No. 19149.

1. **Criminal Law:** APPEAL: RULINGS ON EVIDENCE. A conviction will not be reversed for errors in the admission or exclusion of evidence, unless it appears from the record that the defendant was probably prejudiced thereby.

2. ————: TRIAL: INSTRUCTION: "REASONABLE DOUBT." The instruction defining a reasonable doubt, set out in the opinion, sustained.

3. ————: ————: ————: PROOF OF ALIBI. The instruction set out in *Nightingale v. State*, 62 Neb. 371, 374, which announces the rule as to evidence tending to show an alibi, approved, and the rule reaffirmed.

ERROR to the district court for Lancaster county: ALBERT J. CORNISH, JUDGE. *Affirmed.*

*Adams & Jeary,* for plaintiff in error.

*Willis E. Reed, Attorney General, Charles S. Roe* and *Jesse B. Strode, contra.*

FAWCETT, J.

From a conviction of the crime of robbery, in the district court for Lancaster county, the defendant has prosecuted error to this court.

The brief of plaintiff in error, who will be designated as defendant, assigns 12 errors. The first nine assignments relate to the rulings of the court in the admission and exclusion of evidence. When the questions and answers referred to in these assignments are taken in connection with their context, it becomes apparent that no prejudicial error, if any at all, was committed.

The ninth assignment assails the ruling of the court in sustaining a motion to strike the answer to a question propounded to defendant while testifying as a witness in his own behalf. The crime with which defendant was charged, if committed by him, was committed in connection with one Frank Conan, who had testified as a witness for the state. Defendant was being interrogated as to Conan and

had testified that he knew him. "Q. I will ask you, Mr. Carter, were you with Frank Conan on Saturday night the 1st day of August last? A. No, sir. Q. I will ask you, do you know where you were Saturday night the 1st day of August? A. I certainly do. Q. Now, Mr. Carter, just tell the jury where you were and who was with you Saturday night, the 1st day of August. A. On Saturday night, the 1st day of August, I had an appointment with Harry Smith and Lee Chester at the pool hall, I don't remember who was owning it then, Eskew or Seiford, between O and P on Eleventh street, and I met him there, and we went down to Rohrig's saloon, or Jetter's saloon, which is the same thing; the same place, and had three glasses of beer, and came back to the pool hall, and got the horse and buggy, and went out over the O street viaduct, dug some fish worms on the north side of the road, came back to town, and went out to Eleventh and B, and we stopped at a store, and Harry Smith and Lee Chester went in and bought some lunch, and we went on out to High street over to Fourteenth, and on out three or four miles to the creek, and fished all night, and along about, oh, I should judge anywhere from 7 to 9 o'clock, we started back the next day, on Sunday, and I was not in town at any time during that time. I have been persecuted in this town for years by Jim Malone.

"Mr. Hager: The defendant moves to strike out the answer as not responsive to the question. Sustained. The defendant excepts."

The ninth assignment refers to the sustaining of this motion. A simple reading of the answer and the motion gives color to defendant's assignment, but it is argued with much force by the state that the motion to strike related simply to the last sentence in the answer, viz.: "I have been persecuted in this town for years by Jim Malone." (Mr. Malone was chief of police.) The answer above quoted up to this last sentence was so clearly responsive to the question, and the last sentence so clearly not responsive thereto, that it is apparent that counsel on both sides, the court and the jury could not have understood

.that any of the answer was stricken but the last sentence. The next question asked by counsel for defendant indicates that he so considered it. The question was: "What time did you get back to Lincoln, Mr. Carter?" No objection was interposed to this question by the state, and he answered: "Oh, I should judge, I don't remember the exact time, sometime in the forenoon, 9 or 9:30, somewhere like that, I don't remember the exact time. I have no reasons to remember it." It will be seen that this question called for a continuation of the answer which the witness had just given. If that answer had been entirely stricken out, the question and answer last cited would have been unintelligible, as it would not be a continuation of anything which had preceded it. That the whole answer under consideration was not considered as having been stricken out is further shown by the cross-examination of the defendant. He was asked: "Q. And it was on the 1st of August, you remember very distinctly, that you went fishing? A. Oh, yes, sir. * * * Q. Was there any particular reason why you should go over to the viaduct to get the bait on the 1st of August? A. Yes, sir; when we all got back we thought Chester would have the bait, and when· he didn't have it we thought somebody would .have it, but they didn't have it, and we took the boys over there to get it. Q. And that was the reason you went that time? A. Yes, sir." Defendant interposed no objections to those questions by the state on cross-examination, notwithstanding the fact that they were based upon testimony given by the defendant on direct examination which, by the ninth assignment, it is now contended, had been stricken out.

The tenth assignment is based upon the refusal of the court to give instruction No. 4, requested by defendant, in which the court was asked to direct the jury that, "if you find in this case that the evidence fails to show any motive, cause or reason on the part of defendant to commit the act of which he is accused, then you should consider this fact in determining upon your verdict." The instruction was properly refused. The defendant was charged with having made an assault upon one Elga L.

Horn and forcibly taken from him $6 in money. We do not think that the rule as to motive has any application to a case of this character.

The eleventh assignment, and the one most vigorously presented, assails the giving of instruction No. 4, on the question of reasonable doubt, as follows: "By the term 'reasonable doubt' is not meant that the accused may possibly be innocent of the crime charged against him, but it means some actual doubt having some reason for its basis. When the testimony adduced in its weight and effect be such that two conclusions can be reasonably drawn from it, one favoring innocence and the other tending to establish guilt, then the charge of guilt is not established beyond a reasonable doubt. A reasonable doubt that entitles to an acquittal is a doubt reasonably arising from all the evidence, or want of evidence, in the case. The proof is deemed to be beyond a reasonable doubt when the evidence is sufficient to impress the reason and understanding of ordinarily prudent men with a conviction on which they would act in the most important concerns and affairs of life."

It is argued that an instruction like this has been condemned in Wisconsin and discredited in cases cited from other states; but an examination of the cases cited shows that the instructions considered in those cases differ materially in their wording from the one under consideration here. From *Polin v. State,* 14 Neb. 540, 547, to *Whitney v. State,* 53 Neb. 287, 298, an instruction in this form has been sustained. In *Whitney v. State,* after quoting the instruction there given, which is substantially the same as the one now under consideration, we said: "The foregoing states the law correctly. Instructions, either in the identical language, or in substance the same, have been approved by this court in the following cases"—citing *Polin v. State, supra, Langford v. State,* 32 Neb. 782, and *Lawhead v. State,* 46 Neb. 607.

The last assignment assails the giving of instruction No. 5, on the question of alibi. We deem it unnecessary to set out this instruction. A substantially exact copy

of the instruction will be found set out in *Nightingale v. State*, 62 Neb. 371, 374. After quoting the instruction, we said: "This instruction, we think, is not subject to any just criticism."

A careful consideration of the entire record fails to disclose any prejudicial error. The judgment of the district court is therefore

AFFIRMED.

HAMER, J., not sitting.