JAMES P. ERSKINE, Plaintiff in Error, *v.* THOMAS DAVIS, Defendant in Error.

### ERROR TO ADAMS.

Where the party actually owning land, and intending to convey it, has really executed the deed, the conveyance is good, notwithstanding the grantor's name, in the body of the deed, is written with a different middle initial from the one in the signature.

In law, the middle letter of a name is no part of the name, and may be dropped and resumed or changed at pleasure, and the only inquiry is, was the deed executed by the proper party?

The law does not presume that women are married until the marriage is proven. The presumption of coverture is prospective, from the time when coverture is shown to exist, not retrospective.

JAMES P. ERSKINE filed in the Circuit Court of Brown county, a declaration in ejectment, in the usual form, against Thomas Davis, claiming in fee simple the undivided seventeen-eighteenths of the north-west eight, township one south, range four west of fourth principal meridian, and in Brown county.

Declaration also contained a second count, filed by leave of court, claiming the undivided eight-ninths of the same premises in fee simple.

To this declaration, defendant pleaded not guilty, and plaintiff added the similiter.

The venue in said cause was regularly changed from the county of Brown to the county of Adams, and the case was tried before SIBLEY, Judge, without a jury, by consent, and the court

found the issue joined on said second count for plaintiff, that he was the owner, in fee simple, of the undivided eight-ninths of said premises, and found defendant not guilty, on the issue joined on said first count, which claims the undivided seventeen-eighteenths of said premises.

Plaintiff moved for a new trial. The court overruled said motion, and rendered judgment against defendant for eight-ninths of said premises, and for costs, and awarded a writ of possession. A bill of exceptions was thereupon filed and made part of the record, as follows, to wit:

Plaintiff on said trial, offered and read in evidence:

First. A patent in due form of law, from the United States, conveying in fee the north-west eight, township one south, range four west of the fourth principal meridian, to Thomas Johnson, and dated 26th February, 1818.

Second. A deed in due form from Thomas Johnson to Harriet Gittings, dated 4th June, 1818, conveying in fee simple the premises last above described.

Third. A deed in due form of law, from Harriet Gittings, John S. Gittings and Charlotte E. Gittings, his wife, Thomas E. Gittings and Julia E. Gittings, his wife, Lambert Gittings, James C. Palmer and Juliet, his wife, Solomon McMullen and Maria S., his wife, Luther Littig and Louisa E., his wife, Richard Croxall, William D. Jamieson and Eleanor, his wife, Henrietta E. Croxall, James Gittings and Mary E., his wife, Margaret S. Gittings, Wm. R. S. Gittings and Martha M., his wife, to said plaintiff, dated 28th November, 1854, duly acknowledged, and conveying said premises in fee simple.

Defendant objected to reading of this deed, on account of alleged erasure and alterations.

Plaintiff then read a deposition of *Andrew Sterrett Ridgley,* who therein testifies, that he lives in Baltimore, Maryland; that Harriet Gittings formerly lived there, that he knew her; she was his aunt, his father's sister; that she was the wife of James Gittings, of Baltimore, Maryland, and that said James Gittings died many years ago in Baltimore. That Harriet Gittings is dead; she survived her husband, and died in Baltimore some eight or ten years ago, probably longer.

That John S. Gittings, Harriet Gittings, Lambert Gittings, Juliet Palmer, wife of James C. Palmer, Thomas E. Gittings, Louisa E. Littig, wife of Luther Littig, Maria S. McMullen, are the children of said Harriet Gittings (grantee in deed from Johnson); that Eleanor A. Jamieson, wife of W. D. Jamieson, and Henrietta E. Croxall, are the only children of Richard Croxall and Deborah Croxall, deceased, whose maiden name was Deborah Gittings, daughter of said grantee, Harriet Gittings;

that James Gittings, William R. S. Gittings and Margaret S. Gittings, are the children of James Gittings, late of Baltimore, Md., deceased, who was the son of said Harriet Gittings; that Charlotte E. Gittings is the wife of John S. Gittings, that Julia E. Gittings is the wife of Thomas E. Gittings, that Mary E. Gittings is the wife of James Gittings, and that Martha M. Gittings is the wife of William R. S. Gittings; that the above named persons, with the exception of those referred to as being dead, were alive on the 28th November, 1854, (the date of the deed to plaintiff.)

Elizabeth Gittings, a daughter of said grantee, Harriet Gittings, died in Baltimore, Md., many years ago, and after the death of said Harriet, her mother. Said Harriet Gittings at her death left no other children, or descendants of a deceased child or children, except those above named, with the exception of three children of James Gittings, deceased, who was a son of said Harriet, two of whom are minors, and a son named Henry—he knows of no others.

Said Harriet Gittings left no father or mother, or brothers or sisters, surviving her.

The said deposition was taken on the 19th of May, 1856, in another cause, and was read in this cause by agreement, as if regularly taken therein.

Plaintiff then read in evidence the following deposition of *Edward J. Peters*, taken in this case, on the 27th of August, 1860:

Witness resides in Baltimore, Maryland; knew Harriet Gittings; she resided with her husband, James Gittings, in Baltimore, Maryland. Knew them both from my infancy; was on intimate terms with them; she was never married but once.

James Gittings, her husband, died many years since; she survived her husband; she is dead. Witness knows John S. Gittings, and his sister, Harriet Gittings. Charlotte C. Gittings, another sister of said John S. Gittings, died many years since when quite young, single, and never having been married. Witness knows Lambert Gittings, Juliet Palmer, formerly Juliet Gittings, now the wife of James C. Palmer. Witness also knows Richard Croxall and his two daughters, Eleanor A. and Henrietta E., the former now the wife of Wm. D. Jamieson, and the latter the wife of Dr. Gibbs. Witness knows well, Thomas E. Gittings and Julia E. Gittings, his wife, also, James Gittings and Mary E. Gittings, his wife, also, Louisa E. Littig, formerly Louisa E. Gittings, the wife of Luther Littig, also, Maria S. McMullen, formerly Maria S. Gittings, the wife of the Rev. Solomon McMullen, also, William R. S. Gittings, Martha M. Gittings and Margaret S. Gittings; said John S. Gittings, Har-

riet Gittings, Lambert Gittings, Juliet Palmer, Thomas E. Gittings, Louisa E. Littig and Maria S. McMullen, are the children of said James and Harriet Gittings, deceased. They had another daughter named Deborah, the wife of the above named Richard Croxall; she died many years ago, leaving two children already named, viz.: Eleanor A., the wife of Wm. D. Jamieson, and Henrietta E., the wife of Dr. Gibbs—they were the only children of said Deborah. Their father, Richard Croxall, is now alive. James Gittings, William R. S. Gittings, Martha M. Gittings and Margaret S. Gittings, are the children of James C. Gittings, who was the oldest son of the first above named James and Harriet Gittings.

Said James and Harriet were man and wife, and were so regarded and treated, by a large circle of friends and acquaintances. Deborah, the daughter of said James and Harriet Gittings, and wife of Richard Croxall, died many years ago, having had and leaving only two children born of her marriage with Croxall, viz.: Eleanor A. and Henrietta E. Juliet Palmer, Louisa E. Littig, Maria S. McMullen and Eleanor A. Jamieson, were married prior to 28th November, 1854; Juliet Palmer to James C. Palmer, Louisa E. to Luther Littig, Maria S. to Rev.. Solomon McMullen, and Eleanor A. to Doctor William D. Jamieson.

Said Harriet Gittings first named, had a son of her said marriage with said James Gittings, named James C. Gittings. He was her oldest child; he died about 1836 or 1837; he married Rebecca N. Smith, who survived him. He left of that marriage surviving him, six children, viz.: Henry N., James, William R. S., Martha M., Margaret L., and John Charles, the last named born a few months after his father's death; he is now absent, know not whether now alive or not. The said James C. never had any other children.

Said Harriet Gittings first named had a daughter named Elizabeth, born of her said marriage with said James Gittings. Said Elizabeth died many years since, unmarried, and without ever having had any issue. Said Harriet Gittings first named never had any other child or children, or descendants of a deceased child or children, than those I have named above.

This was all the evidence offered. The court thereupon found defendant guilty as to undivided eight-ninths of N. W. 8, Town 1 S. 4 W. aforesaid, and that plaintiff was the owner thereof in fee, and that defendant is not guilty as to residue of premises in first count described. Plaintiff excepted to opinion of the court on such finding; and also excepted to opinion of the court in not finding for plaintiff as to seventeen-eighteenths of said land, instead of said eight-ninths thereof.

Plaintiff entered a motion for a new trial, because

The finding of the court is against the law.

It is against the evidence.

The court should have found the defendant guilty of unlawfully withholding the undivided seventeen-eighteenths of said premises, and that plaintiff was the owner thereof in fee simple, and the court erred in finding defendant guilty only as to the undivided eight-ninths of said premises, and that plaintiff was the owner of only said undivided eight-ninths, when by law plaintiff was entitled to recover the undivided seventeen-eighteenths of said premises.  ·

The court overruled said motion, and rendered judgment on said finding for said undivided eight-ninths of said premises, and costs ; to which the plaintiff at the time excepted.

The errors assigned are :

In not finding that plaintiff was entitled to recover the undivided seventeen-eighteenths of said premises, and in not rendering judgment for plaintiff therefor.

In finding for plaintiff for undivided eight-ninths of said premises, when by law the finding should have been for the undivided seventeen-eighteenths of said premises.

In overruling plaintiff's motion for a new trial for reasons set forth in bill of exceptions.

WILLIAMS, GRIMSHAW & WILLIAMS, for Plaintiff in Error.

SKINNER, BENNESON & MARSH, for Defendant in Error.

CATON, C. J.   When sifted down into a tangible shape, there are but two questions, as we apprehend, in this record requiring our consideration, although we shall notice one other in conclusion.   The first arises upon the execution of the deed by Margaret Gittings, who was the owner of one-sixth of one-ninth of the premises, and the other upon the execution of the deed by Henrietta Croxall, who was the owner of one-half of one-ninth of the premises.

The objection to the execution of the deed by Margaret, is that her name in the body of the deed is written Margaret A. Gittings, and her signature to the deed is Margaret S. Gittings, which is the real name of the party who owned that interest in the land, and who designed to convey that interest by the deed she thus executed.   If this was a mere question of identity of a paper described in a pleading which had misstated the middle name, and which could have but one correct description, it might be fatal as a misdescription of the paper.   This is a very different case.   The middle name might have been wholly omit-

ted in the body of the deed, or in the signature, and the conveyance still be held good, if the party actually owning the premises and intending to convey them was intended to. be described in the deed, and she actually signed it. In law the middle letter of a name is no part of the name. It may be dropped and resumed, or changed at pleasure, and the only inquiry is one of substance—was the deed in fact executed by the proper party? It is unnecessary now to say whether this would be so had there been a misdescription of the christian or surname, as Mary instead of Margaret, or Smith instead of Gittings.

The next objection is, that there should have been affirmative proof that Henrietta Croxall was sole at the time she executed the deed.

The deed was executed in November, 1854. In May, 1856, the deposition of Ridgley was taken. He gives an account of all of the descendants and heirs of Harriet Gittings, from whom the grantors in this deed inherited the land. Among others, he states that Deborah Croxall was a daughter of Harriet Gittings, and that she died leaving two children, Eleanor A. Jamieson, wife of W. D. Jamieson, and Henrietta E. Croxall. Nearly two years after the execution of the deed, this witness, who was a relative of the family and intimately acquainted with them all, speaks of Henrietta by her maiden name, while he speaks of her sister as being married to Mr. Jamieson. Now we can hardly believe that had Henrietta at that time been married to Dr. Gibbs, he would have spoken of her by her maiden name, when he describes her sister as a married woman, and by her husband's name. Against this pregnant inference arising from the testimony of this witness, and against the legal presumption that she continued single till she is proved to have been married, we are asked to presume that she was a married woman when she executed the deed in 1854, because Mr. Peters, whose deposition was taken in 1860, spoke of her as being at that time the wife of Dr. Gibbs. The presumption of coverture is prospective from the time when coverture is shown to exist, and not retrospective. If we shall presume, for the purpose of avoiding the deed executed by her in her maiden name, that she was married six years before we have any evidence that she was married at all, we might, with the same propriety, presume that she had been married sixteen years. Such is not the law.

But much more than this, we are asked.to presume that Harriet Gittings must have been a married woman at the time she executed the deed in her maiden name, because we may reasonably infer from the testimony that she had for a long time been of a marriageable age, and in a great majority of cases we know

that women do get married. Perhaps it may be unfortunate that it is so, but as we understand it, the law cannot make maiden ladies *femmes covert* by mere presumption, and against their consent. We must have some tangible evidence that they have actually been married before they can claim the benefits or be subjected to the burthens of that relation, and especially before strangers shall take any advantage on the assumption that they are married.

We think the plaintiff showed title to seventeen-eighteenths of the land, and that the court erred in giving him only eight-ninths.

The judgment is reversed, and the cause remanded.

*Judgment reversed.*