State *ex rel.* Willoughby *v.* Gates.

I concur in the opinion of the majority with the above exception, and in the result.

———————

STATE OF CONNECTICUT, AT THE RELATION OF ALVIN L. WIL-
LOUGHBY, *vs.* BENJAMIN W. GATES.

Votes cast at an election for *A. J. W.*, may be shown to have been intended for *A. L. W.*

The fact that *A. L. W.* was a candidate, and received a large number of votes, and that no person of the name of *A. J. W.*, or of the same first and last names without the middle initial, resided within the district, would be satisfactory evidence to show that the votes must have been intended for *A. L. W.*

Such inquiry made by the court, and such votes counted for the person for whom they were intended, in determining, upon an information in the nature of a quo warranto, the rights of respective claimants to an office to which they claimed to have been elected.

Such an inquiry involves no violation of the secrecy of the ballot, and there is nothing in the policy of the law which forbids it.

INFORMATION in the nature of a writ of *quo warranto;* brought to the Superior Court in New Haven County.

The information alleged that the relator, on the 1st day of October, 1875, was a freeman and elector of the state and a resident and voter of the fourth ward of the city of New Haven, and that at an election of councilmen held in that city on that day he was legally elected a councilman of that ward, to hold the office from the first day of January, 1876, to the 1st day of January, 1877, and accepted the office, and on the 1st day of January, 1876, claimed, and had ever since claimed to be admitted into the common council of the city as a lawful member, but that the defendant on that day without right usurped and had ever since usurped the office, and had taken and enjoyed all its privileges, to the exclusion of the relator and to his damage and against the peace.

To this information the defendant pleaded that he was himself at the election in question legally elected to the office in question, and was duly declared to be so elected, and that

the relator was not elected to the office, and that he had taken and was exercising the office by right and not by usurp-ation. Other allegations of the plea appear by recital in the replication.

To this plea the Attorney for the State filed the following replication:

That for anything above alleged by the defendant the State ought not to be barred from having said information against the defendant, because said Attorney saith that true it is that at the time of the annual meeting of said city, holden on said first Monday of October, 1875, the defendant was, and for more than five years next prior thereto had been, a freeman of said city, resident in said ward; that the voting in said ward was duly held at the store of S. V. Taft in said ward; that Charles B. Foote was duly appointed and acted as pre-siding officer at said ward meeting; that the ballot boxes were duly kept open for the reception of votes in said ward from the hour of six o'clock in the forenoon until the hour of five o'clock in the afternoon of said day, when they were closed; that the ballots therein were duly and publicly counted, and that of said ballots, by said official count, Adam Miller was duly found and declared to have received four hundred and ten, and Edward Wines was duly found to have received three hundred and ninety-three, that said Benjamin W. Gates was duly found to have received three hundred and eighty-five, that said relator was found to have received three hundred and eighty-three, that Thomas Wallace, Jr., was found to have received three hundred and seventy-four, that Franklin S. Bradley was found to have received three hundred and seventy-two, that Alvin J. Willoughby was found to have received thirty-five, and that Thomas Wallace was found to have received eighteen; that thereupon the said result of said elec-tion was duly declared and certified to the meeting of freemen of said city held in the first ward thereof, whereof, and of the said city meeting holden on said day, John F. Comstock was duly appointed and acted as moderator and presiding officer; that thereupon said Comstock, as said moderator and before the adjournment thereof, in open meeting publicly declared

that Adam Miller, Benjamin W. Gates, and Edward Wines had been on that day duly elected councilmen of said city from said ward for the said next ensuing municipal year; and that thereupon said city meeting was duly adjourned without day and due return of said election made by said presiding officer to the clerk of said city under his hand. Also that true it is that the defendant was duly notified by the city sheriff to attend the first meeting of the council of said city at the opening of said municipal year, and did attend the same and was duly sworn, and accepted said office of councilman, and hath ever since acted as such councilman by virtue of said election. But said Attorney further saith that the said thirty-five ballots cast as aforesaid at said meeting for Alvin J. Willoughby were intended by the freemen who cast said ballots to be cast for said relator, and said ballots so cast were cast for said relator Alvin L. Willoughby by the name of Alvin J. Willoughby, and ought in truth and right to have been counted for said relator; and so said Attorney says that the said Benjamin W. Gates was not elected to the office of councilman of said city of New Haven from the aforesaid ward for the term aforesaid as in the said plea is supposed; and this said Attorney is ready to verify; wherefore &c.

To this replication the defendant demurred, and the case was reserved upon the pleadings for the advice of this court.

*S. E. Baldwin* and *T. H. Russell*, in support of the demurrer.

1. The statute required the "names" of the persons voted for to be "written or printed" on the ballots. Alvin J. Willoughby is not the name of Alvin L. Willoughby. *Non constat* but there is an Alvin J. Willoughby residing in the ward in question; the contrary is not alleged, and cannot be presumed. Assume that there was an Alvin J. Willoughby, as well as an Alvin L. Willoughby, can the *intention* of those who voted for Alvin J. to vote for Alvin L., or their voting for Alvin L. "by the name of Alvin J. Willoughby," avail to override the statute, which requires the ballots to show the *actual* name of the party voted for? The middle initial is an

essential part of the name. *Commonwealth* v. *Perkins*, 1 Pick., 388; *Commonwealth* v. *Hall*, 3 id., 262; *Commonwealth* v. *Shearman*, 11 Cush., 547; *Bull* v. *Franklin*, 2 Speers, 46; *Bowen* v. *Mulford*, 10 N. Jersey Law., 236; *S. C.*, 5 Halst., 230; Gen. Statutes, page 71, sec. 11. Alvin J. Willoughby is not, therefore, the name of Alvin L. Willoughby, nor can votes for Alvin J. be counted for Alvin L. *People ex rel. Lake* v. *Higgins*, 3 Mich., 233; *People ex rel. Williams* v. *Cicott*, 16 id., 283; *People ex rel. Crawford* v. *Molitor*, 23 id., 341; *State ex rel. Loomis* v. *Moffitt*, 5 Ham., 358; *State ex rel. Spence* v. *Judge of Ninth Circuit*, 13 Ala., 805. At the state election in New Hampshire in 1875, the Governor and Council, as the board of canvassers, threw out a number of ballots cast for "Natt. Head," in the face of clear evidence that Nathaniel Head, (whom they would have sufficed to elect if counted,) commonly wrote his name "Natt. Head," was as well known by that name as by his full name, and was undoubtedly the party intended. In this decision, it is understood, the judges of the Supreme Court of the state concurred.

2. No distinction can be drawn between the middle and any other name. The authorities on which the relator relies make no such distinction. *People* v. *Cook*, 8 N. York, 67; *Attorney Gen. ex rel. Carpenter* v. *Ely*, 4 Wisc., 420. The principle claimed, if carried to its logical result, would amount to this, that, whatever be the name on the ballot, the real intent of the voter can be shown, even when it contradicts the apparent intent as evidenced by the writing. There are no precedents to sustain such a doctrine. In the cases relied upon by the relator it was averred and proved that there was no person equally eligible to the office claimed, to whom the doubtful ballots could apply. The adoption of such a principle would be in opposition to the settled rule of law that parol evidence cannot be received to contradict a writing.

3. The proof of the intent of a vote in the manner proposed would necessarily involve an inquiry as to who cast the ballot in question. This is contrary to the policy of the law and the spirit of the constitution itself, as violating the secrecy of the ballot. Constitution of Conn., Art. 3, Sec. 5, and Art.

6, Sec. 7; Gen. Statutes, page 71, sec. 11, page 72, sec. 13, and page 518, sec. 27.

4.   A decision in favor of the relator would substitute for a simple and intelligible rule of law, which none can misunderstand, the guess-work of the canvassing officer, cause delay and uncertainty in elections, and greatly increase the opportunities for bribery.   Once admit the principle that election officers or courts can set aside the intention expressed on the face of the ballot, in favor of a secret intention entertained or claimed to have been entertained by the voter, and you can set no limits to the evidence which they can receive or the lengths to which they can go.   The court, it would seem, could allow itself no greater latitude than the election officers, and it is easy to see how far partisan feelings might impel the latter.

*S. L. Bronson,* contra, cited *People* v. *Ferguson,* 8 Cowen, 102; *People* v. *Cook,* 8 N. York, 67; *People* v. *Pease,* 27 id., 45; *Attorney Gen. ex rel. Carpenter* v. *Ely,* 4 Wisc., 420; *State ex rel. Spaulding* v. *Elwood,* 12 id., 552; *State ex rel. Phelps* v. *Goldthwaite,* 16 id., 146; *People ex rel. Finnegan* v. *Mayworm,* 5 Mich., 146; *State ex rel. Spence* v. *Judge of Ninth Circuit,* 13 Ala., 805; *Erskine* v. *Davis,* 25 Ill., 251; *Miller* v. *The People,* 39 id., 458; Brightly on Elections, 267; 3 Am. Law Review, Oct. 1868, p. 142.

PARK, C. J.   At the annual election of members of the common council of the city of New Haven in October, 1875, the defendant received three hundred and eighty-five ballots for councilman of the fourth ward of the city, and the relator, in his proper name of Alvin L. Willoughby, received three hundred and eighty-three ballots for the same office, and there were thirty-five other ballots cast with the name of Alvin J. Willoughby upon them.   If these thirty-five ballots had been counted for the relator, he would clearly have received a majority of all the ballots polled in the ward for councilman of that ward, and would have been elected.   It is alleged in the replication to the answer of the defendant, that these bal-

lots were intended to be cast, and were cast for the relator, by the name of Alvin J. Willoughby, and that justice and right required that they should be counted for him.   The demurrer to the replication admits these allegations to be true ; and the question is, does the policy of the law, or the spirit of the constitution, prevent the court from allowing these votes for the relator, in determining the question whether or not he was elected to the office of councilman.

If a similar question could arise in relation to any thing else than voting by ballot to fill a political office, it would seem as if there could be little doubt about the matter.   And even in such cases it is an every day occurrence in legislative assemblies to count such votes in contested elections, when it appears that they were cast for one of the contestants, under a misapprehension in regard to his real name.

It would be an easy matter to determine whether any elector in the fourth ward bore the name of Alvin J. Wil-loughby, for the names of all electors are found on the regis-try lists provided by law; and even if the names of some electors should have been omitted from the list by mistake, still, in a district so limited in territory and population it could not be difficult to ascertain this fact.   If no elector in the ward bore that name, or bore it with the exception of the second initial, the conclusion would be irresistible, that the ballots were intended to be cast for the relator under the sup-position that Alvin J. Willoughby was his name.   In such a case, one could not entertain a doubt on the subject, for it must have been so, or else the freemen cast their ballots for a mere name and for a person not in existence.

We are unable to see how the policy of the law, or the spirit of the constitution, can be regarded as forbidding such enquiries as these, which, if they result in showing that no other person can be found to whom the ballots can apply, settle the question in every man's judgment without in the least degree violating the secrecy of the ballot.

But it is said by the defendant that the replication does not negate the existence of any elector of the ward by the name of Alvin J. Willoughby, and that therefore the court must

assume that there was such an elector; in which case the allegation of the replication that the ballots were cast for the relator by the wrong name are not sustained, inasmuch as ballots cast for Alvin J. Willoughby, there being such a person, cannot be counted for Alvin L. Willoughby, whatever may have been the intent of the electors in casting them.

We are not now considering whether the relator can prove the allegations in his replication. When the proper time shall arrive for the consideration of that question, the court will see to it that he proves his allegations by proper evidence. It is enough for the purposes of this case that the demurrer admits the allegations to be true. It would seem to follow, however, if the truth of the allegations is necessarily connected with the non-existence of any elector of the ward by the name of Alvin J. Willoughby, that the demurrer, admitting all the allegations of the replication to be true, thereby admits that there was no such elector to whom the ballots could apply. We have shown how the allegations of the replication can be proved without disturbing public policy, or invading the secrecy of the ballot, or encountering any of the objections raised by the defendant. It is shown that these ballots were intended to be cast, and were cast, for the relator, when it is shown that no other elector existed in the ward to whom they could apply. We think this clear, and the replication therefore sufficient.

The authorities on the subject are uniformly in accordance with these views, with the exception of those in the state of Michigan. There, in a recent decision holding the contrary doctrine, the court was divided, but the majority expressed their regret that the rule had been established as it was, but they felt bound to follow it. *People* v. *Cook*, 8 N. York, 67; *Carpenter* v. *Ely*, 4 Wis., 420; *People* v. *Ferguson*, 8 Cowen, 102; *People* v. *Pease*, 27 N. York, 45; *Erskine* v. *Davis*, 25 Ill., 251; *Miller* v. *The People*, 39 Ill., 458.

We advise the Superior Court that the replication is sufficient.

In this opinion the other judges concurred; except CARPEN-TER, J., who did not sit.