THE STATE EX REL. COFFEY, Respondent, vs. CHITTENDEN and others (The State Board of Dental Examiners), Appellants.

*December 18, 1901— January 7, 1902.*

Mandamus: *Scope of proceedings: State dental examiners: Powers: Licenses to practice: Dental colleges, when "reputable:" Evidence.*

1. The scope of *mandamus* proceedings to coerce a person or board to the performance of a judicial or quasi-judicial duty extends only to compelling such person or board to act, not to directing him or it how to act, unless the underlying facts are substantially undisputed, leaving no reasonable ground for action other than one way.

2. If a person or board is clothed with judicial or quasi-judicial power in the determination of questions of fact and the taking of some specific action upon such determination, and fails to make a proper investigation of such questions, it is not within the function of a *mandamus* proceeding, predicated on such neglect, for the court to assume and exercise the duty of such person or board and make such investigation.

3. The character of a dental college or other institution of learning at a particular time may be established by evidence of its character at a prior time not so remote but that it would be reasonable to assume that the prior condition still exists. The rule applies that, "when the existence of a person, a personal relation, or a state of things, is once established by proof, the law presumes that the person, relation, or state of things continues to exist as before, until the contrary is shown, or until a different presumption is raised, from the nature of the subject in question."

4. The character of a dental college in April of one year is evidentiary of its character in May of the next year, and may have sufficient probative force in that regard to reasonably establish such later character.

5. The word "reputable," as applied to dental colleges in the law authorizing the state board of dental examiners to license persons to practice the profession of dentistry, without examination, who have graduated at such a college having certain specified requisites, means *reputable* in the general sense in which the term is ordinarily used: worthy of repute or distinction, held in esteem, honorable, praiseworthy.

6. In passing upon the application of a graduate of a dental college for a license to practice his profession in this state, the board of dental

examiners must determine whether his diploma comes from a reputable source as an independent fact, considering the term "reputable" in its ordinary sense and measuring the character of the college from the standpoint of men competent to judge thereof by reason of their scientific attainments in the line of work for which such a college stands.

7. The state board of dental examiners, proceeding reasonably, is the sole tribunal under the statutes to determine the questions of fact to be solved, precedent to the licensing of a person to practice the profession of dentistry in this state.

8. When a graduate of a dental college applies to the state board of dental examiners for a license to practice his profession, the burden of proof is upon him to establish the reputability of such college.

9. The state board of dental examiners, having once determined the character of a dental college, may properly consider all questions in regard thereto at rest till, by lapse of time or otherwise, some reasonable ground exists for believing that its character may probably have changed.

10. The state board of dental examiners, having once determined the character of a dental college, within all reasonable limits, when and under what circumstances the subject shall be re-examined rests solely in its discretion.

11. Since the law does not define the method by which the state board of dental examiners shall proceed to determine the reputability of a dental college when that is material to its official action, such board may perform its duty in that regard in any reasonable way it may deem proper, and candidates for licenses to practice the profession of dentistry must submit to its judgments so long as they are within the boundaries of reason and common sense.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for Milwaukee county: EUGENE S. ELLIOTT, Circuit Judge. *Reversed.*

Action for a peremptory writ of *mandamus* to compel the state board of dental examiners to license the relator to practice dentistry in the state of Wisconsin. The petition, in the main, is as follows, omitting formal parts: On May 11, 1901, the relator was duly awarded a diploma by the department of dental surgery of the Wisconsin College of Physicians and Surgeons, of Milwaukee, Wisconsin. He

State ex rel. Coffey v. Chittenden, 112 Wis. 569.

had taken three full courses of lectures of seven months each, the last two being at such college. It was a duly incorporated institution under the laws of this state, authorized to grant such diplomas, and was a reputable institution of its kind. On May 21, 1901, the petitioner, upon his said diploma, applied to the state board of dental examiners for a license to practice dentistry in the state of Wisconsin, tendering a fee of $1 to the board, and making proof of the corporate organization of said college. May 23, 1901, said board refused to grant the petitioner's application without examination. The members of the board are prejudiced against the petitioner and the institution which graduated him, and have unreasonably and maliciously determined that the graduates therefrom shall be examined by such board before being licensed to practice dentistry, upon the ground that such institution is not reputable, and acted upon petitioner's application pursuant to such determination.

The board made return to the alternative writ, denying all the allegations of wrongful conduct recited therein, and alleging that its refusal to license the petitioner without an examination was solely because, after a fair and impartial investigation of the college which graduated him, the conclusion was reached that it was not a reputable institution.

The issue thus formed was brought to trial before the court June 20, 1901. Proof was then adduced of what the board acted upon in reaching the aforesaid conclusion, as follows: In April, 1900, the college in question, desiring to join the National Association of Dental Faculties, applied to the state board of dental examiners for its approval thereof, that being a prerequisite thereto. Its rules as to eligibility to membership therein have been substantially adopted by the board, as to what constitutes a reputable dental college. Such rules require, among other things, that no college shall receive a student from another college, giving him an advanced grade, except upon the evi-

·dentiary certificate of his work at the latter being verified by its dean, and upon the same conditions that would have been imposed by it, the facts in that regard to be ascertained by conferring with such institution.    As a basis for action upon said application, the board visited said institution and subjected it to the test of said rules, in the course of which questions were asked of the persons in charge thereof, their answers being taken down by a stenographer. Among such answers were, in substance, the following:    The number of students at the institution is thirty-three.    The faculty is without a dean.    Students are taken from other colleges without investigation as to their standing at such colleges. All members of the faculty are paid except two.    Students have not been received for less than the legal fees stated in the catalogue.    The institution advertises for customers to be practiced upon at the institution.    An investigation of the truth of such answers resulted in a discovery that three members of the faculty were not paid salaries, and that the number of students was twenty-one.    The result was a conclusion not to approve of said application, which was communicated to the faculty of the applicant.    From time to time after the occurrences stated, the members of the board, in an individual way, made inquiries as to the character of the dental department of said college.    Confirmatory of the information obtained as aforesaid, that students were received at the college from other institutions and given advanced standing without adequate knowledge to base such action upon, an instance was brought to the attention of the board where a student was admitted to the college who had failed in his examination at another college and left there dissatisfied on that account, and was given credit for full time spent at the institution from which he came, without examination.    No formal investigation was made after the one mentioned.    On the information then obtained, and that acquired subsequently by the individual members as

stated, the decision was made in May, 1901, that the institution in question was not reputable.

The court, against objection, received evidence tending to explain some of the objectionable matters which the board discovered or concluded existed in April, 1900, and evidence showing that the board was mistaken in such conclusions as to other of such matters, and that those which in fact existed were removed prior to the graduation of the petitioner.

The court delivered an opinion to the effect that the members of the board acted in the utmost good faith in deciding against the petitioner's application upon the ground that the college that graduated him was not reputable, but that it proceeded outside its discretionary authority in that it based its conclusion upon facts existing in April, 1900, without any investigation as to the actual condition of things in May, 1901; that, had the facts upon which the board acted in April, 1900, existed in May 1901, they would have justified the conclusion then reached; but that the conditions had changed so that, at such later date, the college was in fact reputable.

Findings of fact were accordingly filed, which are, in substance, as follows: When the Wisconsin College of Physicians and Surgeons graduated the petitioner, and when he applied for a license to practice his profession, it was a duly organized corporation under the laws of this state, entitled to issue diplomas such as the one granted the petitioner, and was a reputable institution. The requisites for admission were, as a minimum, a certificate of entrance into the second grade of a high school or its equivalent, or a diploma from a reputable medical college, school of pharmacy or veterinary medicine. The requirements of dental students for graduation were attendance upon three full courses of at least seven months each, the first two of which might be pursued in any reputable dental college having the same or

equal standard of requirements, the faculty having the right, however, in any case, to require an examination. A license was refused the petitioner wholly upon the ground that the college was not reputable. The decision was made without any immediate investigation of the institution, hence the conclusion reached was not the result of legal discretion. The board wrongfully refused to license the petitioner, to his damage in the sum of $2 and costs to be taxed.

Upon such facts the court concluded as a matter of law that the petitioner was entitled to a peremptory writ of *mandamus* requiring the state board of dental examiners to license the petitioner to practice dentistry in the state of Wisconsin, and judgment was entered accordingly.

*Joseph B. Doe*, for the appellants.

For the respondent there was a brief *Miller, Noyes & Miller*, and oral argument by *B. K. Miller, Jr.* As to the right of courts to control state boards of examiners, they cited *State v. Fleischer*, 41 Minn. 69; *People v. McCoy*, 125 Ill. 289; *Harding v. People*, 10 Colo. 387; *State Board of Pharmacy v. White*, 84 Ky. 626; *State ex rel. Hathaway v. State Board of Health*, 103 Mo. 22; *Dental Examiners v. People*, 123 Ill. 227. See also 53 Cent. Law J. 361.

MARSHALL, J. It is elementary that in *mandamus* proceedings to coerce a judicial officer or any person or board in the exercise of judicial or quasi-judicial power, the sole legitimate purpose thereof is to set such person or board in motion; to command him or it to act, not how to act, to exercise the judicial power vested in him or it; not to control as to the conclusion to be reached. *State ex rel. Buchanan v. Kellogg*, 95 Wis. 672; *State ex rel. Fourth Nat. Bank v. Johnson*, 103 Wis. 591, 623; *State ex rel. Chasmey v. Teal*, 72 Minn. 37; Merrill, Mandamus, 40. Where there is no reasonable ground to justify a decision by such officer or board other than one way, and there is a failure to act accordingly, the

function of a *mandamus* proceeding is broad enough to remedy the mischief by compelling the making of such decision, in perfect harmony with the rule that the office thereof is not to control discretionary authority, but to compel the exercise thereof. *State ex rel. Fourth Nat. Bank v. Johnson, supra.* That is to say, if the law imposes the duty upon a judicial or quasi-judicial body to do a particular thing upon determining that certain facts exist, and reasonable inquiry be made by it in respect to such facts, and from the information thus obtained there is no reasonable ground for any conclusion other than that the conditions precedent to the performance of such duty exist, and a decision is made to the contrary or performance thereof is refused, such conduct is not the exercise of discretionary power, but a refusal to exercise it,— a refusal or neglect to perform a plain duty imposed by law; and, there being no adequate legal remedy, the way is open for the extraordinary jurisdiction of the court to award its writ of *mandamus.* It is plain that, in such a situation, the court does not deal with disputed facts. It acts upon the theory that the person or body in duty bound to find the facts in accordance with the evidence, in refusing to do so, goes beyond or refuses to exercise his or its jurisdiction, and is, on that ground alone, a subject for coercion by *mandamus. State ex rel. Fourth Nat. Bank v. Johnson, supra.* .

Applying the foregoing stated principles to the record before us, it is manifest that the learned circuit court proceeded erroneously from the beginning to the end of the trial we are called upon to review. Assuming, for the moment, that the state board of dental examiners decided that the institution which graduated the relator was not reputable solely upon evidence of its character one year previous to the date of such decision, as the circuit judge seems to have supposed, and that such course was unreasonable,— that it should have acquired information as to the character

of the college at or about the time of the graduation of the relator, and that in neglecting to do so it failed to exercise a legal discretion,— that did not give the court any warrant, in this proceeding, to do what the board ought to have done and compel it to accept the court's conclusion on questions of fact upon evidence produced for the first time therein,— questions which the board had exclusive jurisdiction to try and determine. In attempting to do so, the court usurped the functions of the board most completely. It might as well have issued a license directly to the relator as to try the question *de novo* as to the reputability of the institution graduating him, and coerce the board into executing its. judgment. Manifestly, the court having come to the conclusion that the board decided properly as to the reputability of the Wisconsin College, except for the remoteness of the evidence upon which the decision was based, and that, it failed to exercise a legal discretion because it did not determine the question presented for decision upon direct evidence of the character of the institution at or about the time it graduated the relator, the relief granted should have been limited to a judgment awarding a writ of *mandamus* compelling the board to proceed and determine the question at issue by a proper investigation. While what is the reasonable limit of such an inquiry is a judicial question, the inquiry itself, cannot be taken from the board by the court otherwise than by a clear usurpation of power.

The next question for consideration is, Was the trial court right in holding, as a matter of law, that evidence establishing nonreputability of the institution in April, 1900, was not sufficient to warrant a decision that its character was the same at the time it graduated the relator. We know of no rule by which such holding can be justified. The learned court, in his opinion, did not attempt to ground the decision on principle or authority, and counsel for respondent must be acquitted of any such attempt in this court.

Reputability of an institution of learning, obviously, has to do with its actual character in that regard, measured by those competent to judge thereof. It rests on conditions that do not ordinarily change in a day or a week or a month. It does not spring up or pass out of existence suddenly. It is one of those conditions which, when once established, is presumed to continue, not indefinitely, but so that lapse of time only weakens the force of the presumption as evidence, and may so weaken it that no one could reasonably be affected thereby. Many illustrations of the rule might be given, that where a situation is once established it is presumed to continue in the absence of evidence to the contrary. The existence of particular relations between persons being established, a presumption of their continuance arises. *Appeal of Reading F. I. & T. Co.* 113 Pa. St. 204. A person once proven to have been a gambler is presumed to have continued such in the absence of evidence of his reformation. *McMahon v. Harrison*, 6 N Y. 443. Coverture once shown is presumed to continue. *Erskine v. Davis*, 25 Ill. 251. The same is true of bad character for truth and veracity (*Sleeper v. Van Middlesworth*, 4 Denio, 431); and as to a particular mode of doing business (Lawson, Presumptive Ev. 214); and with malice of one person toward another (*State v. Johnson*, 1 Ired. Law, 354.) Opinions of individuals, and mental states, once shown to exist, are presumed to continue. 1 Greenl. Ev. § 42. A person shown to be alive at one time is presumed to continue so for the period of seven years.

These illustrations amply indicate the general scope of the principle under discussion. It is grounded on common knowledge that conditions of things, and character of persons, change gradually as a general rule, when they change at all. The exceptions only go to the weight of the presumption of continuity and class it with rebuttable presumptions, but it remains probative to some degree, in some

cases, for a great length of time. No general rule can be stated as to when its force will become so weakened by time as to render it too remote to be considered at all, or to be given weight sufficient to *prima facie* establish the 'fact to which it points. There are exceptions to this, as in case of the continuance of human life. In Greenl. Ev. § 41, the general rule is stated thus:

" When the existence of a person, a personal relation, or a state of things, is once established by proof, the law presumes that the person, relation, or state of things continues to exist as before, until the contrary is shown, or until a different presumption is raised, from the nature of the subject in question."

On the subject of character, lapse of time is not considered to so weaken the presumption of continuance as to render evidence thereof at a period of four years prior to the date of the inquiry irrelevant. *Sleeper v. Van Middlesworth*, 4 Denio, 431. In *McMahon v. Harrison*, 6 N. Y. 443, evidence of character two years prior to the time of the act to be affected was held relevant.

Enough has been said to indicate pretty clearly that evidence of the character of the institution in question in April, 1900, was proper to be considered in determining its character in May, 1901, and that the trial court erred in holding to the contrary. Further, assuming that such evidence was the only proof before the board of the reputability of the college in 1901, and was sufficient to establish nonreputability in April, 1900, it did not transcend the bounds of reason for the board to decide that it was sufficient to establish the same condition in May, 1901, in the absence of any satisfactory evidence to the contrary. The trial court seems to have supposed that if the board acted on information acquired at the earlier date, it failed to find nonreputability in May, 1901. " The reputability of a dental college which the board is obliged to consider must depend upon facts that exist at the time of such consideration," said the learned

trial judge; and further, "They can neither be facts that have existed in the past nor those that may possibly exist in the future, but they must be present facts upon which the board may exercise its judgment." We cannot approve of that doctrine. Of course, the question of fact which the board was required to solve was whether the institution was reputable when it graduated the relator. But facts and cir- cumstances evidentiary of nonreputability, proven to have existed a considerable length of time prior thereto, were relevant, and might be sufficient, unexplained, to establish the ultimate fact involved, if such was the judgment of the board acting within the bounds of reason. The trial court seems to have confused mere evidentiary with ultimate facts, for it is elementary, as we have seen, that, in solving a con- troversy such as the one the board had to deal with, while the situation at a particular time is the final point to be reached, facts establishing the situation within any reason- able period prior thereto, by reasonable inference extend to such point, indicating where the truth lies. That method of establishing controverted facts is so general that we may safely venture to say it cannot be found condemned by any reputable authority.

We have been unable to discover how the trial court came to the conclusion that the decision of the board was based wholly on evidence of the character of the school in April, 1900. The record does not read that way. There was tes- timony that the board, in January, 1901, made an investiga- tion of the standing of students that graduated with the relator, which resulted in obtaining what was supposed to be reliable information that four or five of his class failed in from four to six studies in their first year's work, which was taken at the Milwaukee Medical College, and that they were received into the Wisconsin College and given credit for full time spent at the former institution; that the relator was one of the persons so received; that when he was re-

ceived he was deficient in several branches and that he did not thereafter pursue them in any regular way; that the result of such investigation was persuasive with the board that the condition which they found in April, 1900, existed in 1901. There was further evidence to the effect that from time to time the members of the board, in an individual way, gathered information as to the institution, and further that, though the decision as to the reputability thereof in 1900 was well known to its faculty, no application was made thereafter for a re-investigation; and that no proof was offered by the relator or by his associate graduates, when the board was requested to license them, to remove its impression that the school was not reputable. We have not stated all the evidence, but have stated enough to show clearly that the trial court grievously erred in holding that the board acted solely on information it obtained in April, 1900.

The learned counsel for respondent, as it seems, insist that the judgment appealed from is right and should stand regardless of whether the reasons therefor, given by the trial court, are tenable, and regardless of whether the board rightly decided that the school was not reputable in April, 1900. In that, as we take it, counsel concede, what the trial court did not, that proof of the condition of things in April, 1900, tended to establish the condition existing in May, 1901, but contend that it was unreasonable to hold at the earlier date, from the facts then before the board, that the school was not reputable. In that, as it seems, the same mistake is made that was made by the trial court, i. e., the assumption that the board, in 1901, acted solely on the information obtained in 1900. But, waiving that a moment, we will consider the proposition submitted by counsel.

It must be conceded that the law under which the board acted required them to determine, as a question of fact, whether the relator was graduated by a reputable dental college. It is made their duty to license, without examina-

tion, any regular graduate of any incorporated, reputable dental college which requires that candidates for graduation shall attend two full courses of lectures of five months each, the last of which courses shall be attended in the college which issued the diploma. The law does not attempt to define reputability, but uses the term in its ordinary sense and in such a way as to indicate that an institution may satisfy all the other requisites to a license and yet not be reputable. Other courts that have had to deal with similar laws have reached the conclusion that the term "reputable" is not used in any restricted or particular sense, but to convey its common meaning, the meaning generally ascribed thereto in every day, ordinary expressions calling for its use. That must be so, since there is nothing in the law indicating to the contrary. In *People ex rel. Sheppard v. Illinois State Board*, 110 Ill. 180, it was contended that the law, in providing that a diploma, to entitle its holder to a license to practice dentistry without an examination, must be issued by a reputable college having other characteristics similar to those required by the statutes of this state, left the board no duty to perform in determining reputability except to ascertain whether such other characteristics existed; that the establishment thereof established reputability. Such contention was condemned by the court, as appears from the opinion, as hardly worthy of serious consideration, it being held that "reputable," as the term is used in the law, means reputable and nothing else; that it is not an equivalent of the other requisites mentioned therein, but is an additional requirement. The soundness of that decision cannot be reasonably questioned. In passing upon the application of a graduate of a dental college for a license to practice his profession, the board must necessarily, by the exercise of judgment, determine whether his diploma comes from a reputable source, precisely as they must determine any other statutory requisite, and *reputable* must be

deemed to mean *reputable* in the ordinary sense: "Worthy of repute or distinction; held in esteem; honorable; praiseworthy." Webst. Dict. "Being in good repute; held in esteem; consistent with good faith." Cent. Dict.; *Illinois State Board v. People ex rel. Cooper*, 123 Ill. 227, 245. What is reputable in a dental college must necessarily be determined, too, from the standpoint of men of scientific attainments in the line of work it represents, not that of mere laymen. The purpose of the law itself sufficiently indicates that. Moreover, the terms thereof leave no reason for doubt on the question. It provides that the members of the board shall be practicing dentists, and that the majority thereof shall be members of the Wisconsin State Dental Society.

Notwithstanding what has been said, doubtless the board might, in determining the reputability of a college, act upon such trifling circumstances as to be guilty of an abuse of their discretionary power and be a proper subject for coercion by *mandamus;* but it would take a strong case to warrant a court in convicting them of such an offense. The board here discovered that the Wisconsin College was without a dean, and it is in testimony that such a head, for a dental faculty, is indispensable to reputability of their institution from the standpoint of men learned in the dental profession. They further discovered that students were received and given advanced standing, contrary to the common understanding among college men of what is necessary to graduation with good scholarship and fitness for the practice of dentistry, and in a way liable to result in clothing disreputable men with honors of the school, and which resulted in diplomas being awarded to all of the class of 1901 without their having come up to the standard necessary to enable them to pass examination in several branches of study. The board further discovered, as they honestly supposed and had a right to suppose—whether they were right or wrong on the facts is not material,—that the persons in

charge of the school were guilty of false pretenses in that thirty-one students were claimed to be in the institution, when there were but twenty-one; and that all members of the faculty were paid salaries but two, when in fact three were not so paid. The board further discovered that the conveniences for imparting knowledge to students, and the manner in which the instructional work was carried on, were deficient in several material particulars. They examined three graduates of the class of 1900 in several branches as to their work during the last year of their course, the only time spent by them at the college, and found that they were deficient therein, not up to a reputable standard, and unfit for graduation. Considerable other information was obtained upon which the conclusion of 1900 was based.

Enough has been stated to show that the trial court was right in holding that the conclusion reached in 1900 was amply justified by the evidentiary facts which the board supposed, and had a right to suppose, then existed, regardless of the real truth of the matter. Certainly, in the face of the evidence detailed, no room is left to say the board then abused its discretion, assuming that it was then acting officially. It does not take a person possessed of special knowledge of the requisites of a dental college, to render it capable of doing good work and be deemed worthy of praise, to understand that the faculty must have a head, commonly called a "dean," possessing and efficiently exercising the powers incident to that position, and that it must have proper facilities for imparting scientific knowledge to students, and that the instructional work must be carried on in the manner supposed, by members of the profession of dentistry in good repute, to be reasonably necessary to praiseworthy work; further, that the institution must be so conducted as not to permit persons to wear its honors by graduating on the strength of work at other colleges, not properly evidenced as up to a reputable standard; and that

those responsible for its management must not be guilty of any false pretenses in respect to any matter. connected with its organization or otherwise, which the state board of dental examiners has a right to inquire into.

The learned circuit court erred in holding, as it seems to have done, that every time a person presents himself before the board as a candidate for a state license to practice dentistry, tenders his dollar, presents his diploma, and makes proof of the statutory requisites for the granting of his application, other than that of the reputability of the school graduating him, it is the duty of the board to make an original investigation of and determination as to that subject, by direct evidence of the character of the school at the time of the candidate's graduation, regardless of whether any evidence on the question is tendered by him or any request is made for such investigation. The burden in such a case is on the candidate to demonstrate to the satisfaction of the board the reputability of his *alma mater*, not on the board to establish or disprove it. Having once entered a judgment, so to speak, on a reasonable investigation, condemning the school as not reputable, the board may properly consider such judgment *res adjudicata* when the same subject again comes in question, in the absence of evidence fairly rebutting the presumption of the continuance of the former condition. The attitude of the relator indicates a desire for the benefits of the law, but a defiance of its reasonable requirements. He was the proper actor to bring to the attention of the board the character of his school. If he had accepted that burden and offered proof to show that his *alma mater* was reputable, doubtless the board would have received and considered it in connection with all the other information in its possession. Had he requested the board to specify wherein it supposed the school was not up to a reputable standard, and made a reasonable showing that new light could be shed on the subject, it would doubtless

have given him the desired information and reasonable opportunity to furnish such new light, or proceeded independently of him to obtain it.   To say that the board, of its own motion, under all circumstances, on every occasion of an application by a graduate of a dental college for license to practice his profession, is bound to make an investigation of the question of the reputability of the school, is to advance a proposition that has no support either in the letter or the spirit of the law or any principle governing such bodies.  The character of the school having been once fairly determined by the board, when and under what circumstances a re-examination of the subject should be made must necessarily rest solely in its discretion so long as it acts reasonably.   Obviously, a refusal to reinvestigate the subject is warranted under ordinary circumstances till, by lapse of time or by some circumstance brought to the attention of the board, reasonable ground is furnished for a belief that a material change has or may·have taken place.   Circumstances alter cases.  Where the facts are so easily ascertainable as they were in this case, the subject for investigation being within· reasonable reach of all the members of the board, assuming, as we must, that they would be actuated in passing· upon the application for a license by the single desire to deal justly, and that they would be willing, as they manifestly should be, to resolve reasonable doubts in favor of the candidate so far at least as relates to the making of inquiries on questions of fact upon which his application must turn, lapse of time after one investigation, sufficient to allow a new class of graduates to come from the school would secure a reinvestigation of its character if that was requested, accompanied by a reasonable showing of a material change in regard to the matters in which it was found deficient upon the previous investigation.  The policy of the law under consideration, so long as it stands the test of constitutional limitations. and that is not here questioned, is

something with which courts have nothing to do. Since it requires the board to pass upon the reputability of the school in circumstances like those in this case, and places no limit upon the methods by which it shall gather information bearing on the subject for decision, it may proceed in any reasonable way, and candidates for licenses must submit to its judgments unless they transgress the boundaries of reason and common sense.

To recapitulate, we hold that the trial court erred:

(1) In misconceiving the functions of *mandamus* proceedings, in that, while the court may compel a judicial or quasi-judicial officer or body to perform its duty, it cannot compel performance in any particular way where the underlying questions of fact are disputed.

(2) In trying *de novo* the question of the reputability of the college in question.

(3) In attempting to coerce the board into licensing the relator, yet deciding that it had not determined by a proper investigation the existence of the condition precedent to such action.

(4) In deciding that the board acted wholly on evidence of the character of the college in April, 1900.

(5) In deciding that the board acted illegally because it determined the character of the college wholly upon circumstantial evidence.

(6) In holding that the evidence of the reputability of the institution in April, 1900, had no legitimate bearing upon its character in May, 1901, and was not under any circumstances sufficient to show its character at a later date.

(7) In awarding a writ of *mandamus* based on facts determined by it *de novo*.

With the question of whether the trial court determined correctly, upon the evidence before it, the question of the reputability of the Wisconsin College, we have no concern, since, as indicated, the whole proceeding, as a trial *de novo*,

was erroneous. The trial court should have viewed the decision of the board from their standpoint, not from its original investigation on the subject. We are unable to perceive that the board exceeded its discretionary power or so failed to exercise such power as to be guilty of an abuse thereof.

*By the Court.*— The judgment appealed from is reversed, and the cause is remanded with directions to dismiss the action, with costs in favor of the defendants.

